# CIRCUIT COURT OF THE CITY OF RICHMOND

Sarah N. Massenburg

v.

Wilshire Credit Corp.
and U.S. Bank, National

September 21, 2001

Case No. HK-817

BY JUDGE T. J. MARKOW

This case is before the Court on the Amended Bill of Complaint, the Answer, and Cross-Bill.

Briefly, in January 1997, Sarah Massenburg and Irvin Massenburg and Cityscape Corporation ("Cityscape") entered into a credit transaction in which the Massenburgs were the borrowers and Cityscape was the lender. In connection with the credit transaction, the Massenburgs executed a promissory note ("the note") to the order of Cityscape and executed a deed of trust ("the deed") as a lien on the home at 3125 Enslow Avenue, Richmond, Virginia, to secure the note. Within three years of the credit transaction, CityScape assigned the note to U.S. Bank, National ("National"), which assigned the servicer rights to Wilshire Credit Corporation. Within three years of the credit transaction, Irvin Massenburg died, leaving plaintiff as the sole owner of the home. Plaintiff fell into arrears on the note and National instructed the substitute trustee to foreclose. The substitute trustee advertised the home for foreclosure but during pendency of the non-judicial foreclosure process and within three years of the credit transaction, Massenburg sent notice of rescission to CityScape and Wilshire. The foreclosure sale was enjoined by this Court on the morning of the scheduled sale to maintain the status quo pending resolution of this case.

Plaintiff seeks a declaratory judgment that she has rescinded this transaction pursuant to the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"). The statute requires that plaintiff show that she was a consumer in the credit transaction and that at the time of the transaction the lender underdisclosed the finance charges in an amount exceeding $35 (15 U.S.C. § 1635).

Plaintiff's granddaughter testified without rebuttal that in 1997, when the Massenburgs entered into a credit transaction to refinance an earlier home improvement loan, neither of them was engaged in the operation of a business. Plaintiff testified that both she and Mr. Massenburg were retired at the time of the credit transaction at issue.

This transaction included a $5,975.89 cash-out to the Massenburgs. Defendants argue that there was no stated purpose for the proceeds, that they were not used for home improvement, and, thus, plaintiff was not a consumer for purposes of this transaction.

The majority of the proceeds from the 1997 loan were used to pay off the 1996 loan which the parties stipulate was a home improvement loan. In addition, the loan documents [Plaintiff's Exhibit Number 9] indicate that the cash out was for "work done on House." Plaintiff testified that "he [Irvin] never got no [sic] money from them. When he signed the papers, he never got cash." Plaintiff also testified that the money was intended for a porch enclosure.

In determining whether a transaction is primarily consumer or commercial in nature for purposes of TILA exemption, the court must examine the transaction as a whole and the purpose for which credit was extended. *Gombosi v. Carteret Mortgage Corp.*, 894 F. Supp. 176 (1995). The primary purpose of the loan was refinancing the 1996 home improvement loan, as evidenced by Plaintiff's Exhibit Number 10, in line (d) of Section VII titled Details of Transaction, which shows that $14,500 of the $22,500 borrowed is used to refinance the 1996 loan. These documents are also evidence that the purpose for which credit was extended was to refinance the prior home improvement loan. Thus, the Court finds that the primary purpose of the 1997 loan was for home improvements, a consumer purpose, and plaintiff is a TILA consumer in terms of this transaction.

Though plaintiff has shown that she is a consumer, she must still show that at the time of the credit transaction with CityScape, the lender made an underdisclosure of the finance charges on the 1997 loan in an amount greater than $35. Plaintiff points to several allegedly undisclosed or improperly disclosed figures as evidence of the lender's underdisclosure, and these fees are listed on Plaintiff's Exhibit Number 6.

Ms. Massenburg points first to the $14 Broker Courier Fee as an undisclosed finance fee. However, this fee represents the cost of delivering the borrowers' credit report, and, pursuant to 15 U.S.C. § 1605(e), fees resulting from procuring borrowers' credit report are excluded from the disclosure requirement.

Next, plaintiff argues that Connelly and Associates, the closing attorney, is an agent of the creditor and thus the $29 release fee charged by Connelly and Associates is an undisclosed finance fee. This fee represents Connelly's charge for procuring a release of the 1996 loan that was to be refinanced by the 1997 loan. (Connelly could not have earned this fee until after the loan closed.) This was not a fee charged by or required by the lender but was a request of the lender in the loan settlement instrument. As such, this fee does not represent a finance charge as defined in 15 U.S.C. § 1605.

The allegation with regard to the $45 courier fee paid to Connelly and Associates is that it represents an inaccurate disclosure of the actual courier fee paid. However, Mr. Connelly testified that his firm benefits from a rebate program offered by FedEx, the courier involved. A rebate is a return of some part of the amount paid, meaning Connelly and Associates paid the $45 courier fee first and then received the $8 or $9 back. Thus the amount that was reported paid to the courier is accurate, it merely does not reflect the rebate and plaintiff offered no evidence in proof of her right to that rebate. Thus, the courier fee was accurately reflected in the disbursements. Connelly could not have disclosed the actual charge as the amount of the rebate was determined by the total amount of business Connelly did with the courier over a specified period of time, including a future time.

Finally, with regard to TILA violations, Ms. Massenburg directs the Court's attention to the $16 recording fee that was to be paid to the clerk of the court for release of the prior deed of trust. Plaintiff claims and defendant's witness admits that these moneys were never paid to the clerk of the court and that, in fact, the clerk's release fee had already been satisfied out of previous funds. These funds were refunded to the Massenburgs upon Mr. Connelly's recognition of the error and furthermore, fees such as this, to be paid to public officials, are excludable pursuant to § 1605(e).

The Court finds that Ms. Massenburg is a consumer in a credit transaction. However, since all of the fees allegedly undisclosed or improperly disclosed were excludable pursuant to TILA or simply did not meet the definition of a finance charge, plaintiff has failed to prove underdisclosure in an amount in excess of $35 and thus has not satisfied the statutory requirements for proving a violation of the federal Truth-in-Lending Act.

Ms. Massenburg has also asked the Court for an alteration in the timing of tender. Because the Court finds that plaintiff has not proved a violation of TILA, it need not reach this argument.

Additionally, plaintiff seeks usury damages against defendants, alleging that the lender has charged prohibited fees in violation of Code of Virginia § 6.1-330.72 and has collected excessive fees in violation of § 6.1-330.71. Section 6.1-330.72 of the Code permits collection of fees representing the actual cost of a credit report, title examination, title insurance, mortgage guaranty insurance, recording fees, surveys, attorney's fees, appraisal fees, and a fee to determine if the property securing the loan is located in a special flood hazard area. Plaintiff alleges that the fees discussed above under TILA were collected in violation of the statute. See *Abbey v. Columbus Dodge, Inc.*, 607 F.2d 85 (1979). However, the Court finds that these fees represent the cost of a credit report, recording fees, attorney's fees, insurance fees, appraisal fees, and broker fees, none of which are prohibited by the statute and thus no violation of § 6.1-330.72 has occurred.

Section 6.1-330.71 of the Code prohibits a lender in a credit transaction secured by a subordinate mortgage or deed of trust from charging a borrower a loan fee exceeding five percent of the principal amount of the loan. As evidenced by Plaintiff's Exhibit D, the Massenburgs paid $2397.60 in settlement fees on a $23,500.00 loan.

For the reasons discussed above, all of the fees that plaintiff complains of are statutorily exempt (Va. Code § 6.1-330.72) with the exception of the $1,118.60 broker's fee. Section 6.1-330.72 of the Code states that "[A] broker's fee, finder's fee, or commission may be paid by the borrower not to exceed five percent of the principal amount of the loan if the total of the loan fee permitted under § 6.1-330.71 and broker's fees, finder's fees, or commissions does not exceed five percent of the principal amount of the loan." The broker fee of $1118.60 (line 803 of Exhibit D, attachment to Respondent's Proposed Stipulations) does not exceed 5% of $23,500, the principal amount of the loan. Accordingly, the Court finds that plaintiff has not satisfied the statutory requirements for proving a violation of Virginia's usury code.

Plaintiff next seeks statutory damages of $2000 against National. For the reasons set out above, the Court finds that plaintiff has not proved a statutory violation and thus statutory damages will not be awarded.

Finally, plaintiff seeks an award of damages against Wilshire, the loan servicer, for her loss of right to rescission if the Court rules that the three-year statute of repose bars her claim of rescission against National. The Court did not treat plaintiff's claim as though barred by the statute of repose and thus

finds no reason to address this argument. No claim against Wilshire is supported by the evidence.

In its cross-bill in equity, defendant seeks a declaratory judgment (A) that no violations of the federal TILA have occurred with respect to the Loan entitling plaintiff to damages or any other relief, including rescission, under the TILA or any other statute or rule of law; (B) that whether or not a violation of the federal TILA has occurred with respect to the Loan, plaintiff has no right to rescind the Loan under the federal TILA or any other statute or rule law; (C) that, in the event the Court shall find that plaintiff is entitled to rescind the Loan, this Court impose conditions on rescission that will be equitable and just, including but not limited to the return by plaintiff to National of all proceeds of the Loan; and (D) that the Court grant such other and further relief as is necessary and proper.

Since the Court finds that no violation of TILA or any other statute or rule of law has been shown in this case, defendant's request for a declaratory judgment is granted as to the first count of the Cross-Bill. The subsequent counts of defendant's cross-bill are mooted by the Court's findings and will not be discussed further.

It is, therefore, ordered that no violations of federal Truth-in-Lending Act or Virginia's usury code have occurred with respect to the Loan entitling plaintiff to damages or any other relief, including rescission, under the TILA or any other statute or rule of law and that defendant U.S. National is granted judgment against the plaintiff Sarah Massenburg and she shall take nothing. It is further ordered that judgement is awarded defendant Wilshire Credit Corporation against the plaintiff Sarah Massenburg, and it is further ordered that the injunction issued on April 22, 1999, is hereby dissolved.